

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| APEX LONG TERM ACUTE CARE - § | CASE NO: 09-37096 |
| KATY, L.P.; dba APEX HOSPITAL; dba § | |
| APEX HOSPITAL - KATY § | |
| Debtor(s) § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

On September 18, 2018, P.K. Shah, M.D. and Apex Katy Physicians, LLC ("Apex Physicians") filed a Motion to Reopen Apex Long Term Acute Care-Katy, L.P.'s ("Apex LTAC") bankruptcy case, which was closed in 2013, pursuant to 11 U.S.C. § 350, alleging fraud on the Court on the part of Robert D. Remy, Dr. Stephen Koch, Adeel Zaidi, and various other parties.[1] Specifically, Shah and Apex Physicians argue that Remy filed fraudulent financial statements in this case, making it likely that assets were hidden from the estate and have not been properly distributed in accordance with the Court's confirmation order. Remy argues that Shah and Apex Physicians are precluded from reopening the case because the Motion was filed after the 180-day deadline in 11 U.S.C. § 1144 had elapsed and because they have failed to establish "cause" to reopen the case. Remy further claims that even if the case is reopened, no legal basis exists for tolling the statute of limitations, nor would it be proper to abandon assets pursuant to 11 U.S.C. § 554.

For the reasons set forth below, Shah and Apex Physicians' motion to reopen is denied.

---

[1] Shah and Apex Physicians also implicate Abeer Saqer, A.K. Chagla, and Gary Toche. (ECF No. 564 at 4).

## Background[2]

*Bankruptcy Proceedings*

On September 25, 2009, Apex LTAC filed a voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code. (*See* ECF No. 1). On January 7, 2010, the Court confirmed Apex LTAC's Second Amended Chapter 11 Plan. (*See* ECF No. 212). The terms of the Plan created the Apex LTAC Distribution Trust (the "Trust") which received all of Apex LTAC's assets on the effective date. (ECF No. 212 at 7). On March 13, 2013, William G. West, Jr., the Distribution Trustee for the Trust, filed an expedited motion for entry of a final decree closing the chapter 11 case. (ECF No. 560 at 1–2). On March 14, 2013, the Court entered a Final Decree closing the case, finding Apex LTAC's bankruptcy estate was fully administered. (ECF No. 561 at 1).

*Business Relations*

In 2007, Adeel Zaidi and A.K. Chagla sought to recruit investors for the purchase of real property in northwest Houston with the end goal of building a hospital. (ECF No. 566-5 at 3). Through Prestige Consulting, Inc., a company Zaidi and Chagla owned at the time, they formed (i) Apex Physicians, (ii) Apex LTAC, and (ii) and Apex GP, which acted as Apex LTAC's general partner. (ECF No. 566-5 at 3). Apex Physicians served as Apex LTAC's landlord. (ECF No. 566-5 at 3). Prestige Consulting was hired to staff and manage Apex LTAC, and Abeer Saqer, one of Prestige's directors, was hired to serve as Apex LTAC's interim chief executive officer. (ECF No. 566-5 at 4). Shah was one of a group of initial investors recruited by Zaidi. (ECF No. 566-5 at 3). Shah ultimately served as Apex Physicians managing member, and a company owned by Shah became the majority owner of Apex Physicians. (ECF No. 566-5

---

[2] A substantial portion of this background section was written in reliance on the parties' briefing. It is included solely for background, and this background section does not constitute findings by the Court.

at 3). The goal was to operate Apex LTAC as a long-term acute-care hospital; however, the enterprise was not a success. (ECF No. 566-5 at 3). This failure led to Apex LTAC's bankruptcy and subsequent lawsuits between the parties.

*Previous Litigation*

In 2009, Apex Physicians filed suit in state court against Adeel Zaidi, A.K. Chagla, Apex Katy Physicians-TMG, LLC, Abeer Saquer, and related entities (the "Apex Hospital Project Lawsuit").[3] (ECF No. 564 at 2; ECF No. 566-5 at 5). Apex Physicians and Shah allege that as a result of this lawsuit, "it became apparent that fraudulent financials, including a false financial statement had been filed in this bankruptcy matter on behalf of the debtor's general partner Apex Katy Physicians-TMG, LLC ('Apex GP')." (ECF No. 564 at 2). On May 13, 2011, Saqer and her company, I-Care International LLC, entered into a settlement agreement with Shah and Apex Physicians with respect to claims in the Apex Hospital Project Lawsuit. Subsequently, on May 4, 2015, Shah and Apex Physicians initiated another state court lawsuit against Saqer and I-Care, "claiming they [had been] fraudulently induced into the Settlement Agreement."[4] (ECF No. 566 at 3). The state court granted summary judgment in favor of Saqer and I-Care on December 19, 2016. (ECF No. 566-3 at 2). Subsequent attempts by Shah and Apex Physicians to appeal the summary judgment in the second lawsuit were denied. (ECF No. 566-4 at 2; ECF No. 566-5 at 3; ECF No. 566-6 at 2–5). Remy alleges that it was not a party to this litigation. (ECF No. 571 at 13).

---

[3] *Apex Katy Physicians, LLC, et Al. v. Adeel Zaidi, et al.*, Cause No. 2009-02578 (61st Harris County Dist. Court). The trial court in that case "rendered judgment holding the defendants and one non-party jointly and severally liable to two plaintiffs . . . ." *Zaidi v. Shah*, 502 S.W.3d 434, 437 (Tex. App.—Houston [14th Dist.] 2016). The Court of Appeals, however, reversed the trial court's judgment and remanded for a new trial on all issues of liability and damages. *Id*. In pleadings before this Court, Shah and Apex Physicians claimed that "the case was subsequently remanded for retrial on certain damages issues," failing to note that the remand also reversed the trial court's judgment on the issue of liability. (ECF No. 564 at 2). The omission is of concern to the Court.

[4] *Apex Katy Physicians, LLC, Panjak K Shah and Indus Associates v. Abeer Saqer and I-Care International, LLC*, Cause No. 2015-25588 (61st. Harris County Dist. Court).

On March 31, 2016, Shah and Apex Physicians filed a third state court lawsuit, naming Remy as a defendant.[5] (ECF No. 565 at 3). According to Remy, the lawsuit alleged that he breached his legal and ethical duties as an attorney, including directing the preparation of Apex GP's purportedly fraudulent financial statement. (ECF No. 565 at 3). On February 6, 2018, the state court granted in part and denied in part Remy's Motion for Summary Judgment in the case. (*See* ECF No. 561-1). Subsequently, on March 9, 2018, Shah and Apex Physicians amended their complaint to add Saqer and I-Care to the litigation. (ECF No. 566 at 4; *see* ECF No. 566-7). On November 13, 2018, the state court granted Remy's No-Evidence Motion for Summary Judgment against Shah and Apex Physicians and dismissed with prejudice all claims filed against Remy by Shah and Apex Physicians. (ECF No. 571-3 at 1). The state court lawsuit remains pending pursuant to Shah and Apex Physicians' Motion to Stay. (ECF No. 566-9 at 2).

*Motion to Reopen*

On September 18, 2018, Shah and Apex Physicians filed a Motion to Reopen this bankruptcy case. (*See* ECF No. 564). Shah and Apex Physicians argue that the case should be reopened to examine allegedly fraudulent financials created by Robert Remy, Dr. Stephen Koch, Adeel Zaidi, Abeer Saqer, A.K. Chagla, and Gary Toche. (ECF No. 564 at 4). Specifically, Shah and Apex Physicians claim that because the Court relied on "fraudulent financial statements" to distribute Apex LTAC's remaining assets, "the case must be reopened to determine what assets were intentionally excluded and by whom." (ECF No. 564 at 4). Shah and Apex Physicians rely on an affidavit prepared by Naqi Ali Sanjanlal[6] to argue that "the

---

[5] *P.K. Shah et al. v. Robert D. Remy*, Cause No. 2016-20734 (129th Judicial District Court). Robert D. Remy is listed in Apex LTAC's "List of Creditors Holding 20 Largest Unsecured claims." (ECF No. 4 at 1).

[6] Naqi Ali Sanjanlal "was the certified public accountant, through Shebay & Associates, for Apex Katy Physicians, LLC and Apex Katy Physicians-TMG, LLC . . . ." (ECF No. 565-2 at 2). Sanjanlal was personally familiar with Apex Physicians' and Apex TMG's financial statements during the period from 2007 through 2009. (ECF No. 565-2 at 2).

financial statement . . . advanced by Apex GP during the bankruptcy proceedings is false and was prepared at the direction of attorney Robert Remy . . . ." (ECF No. 564 at 2). In the alternative, Shah and Apex Physicians ask the Court for "a declaration that [the] assets and related claims have been abandoned by the bankruptcy estate," and that the statute of limitations for any claims related to the alleged fraudulent financial statements have been tolled. (ECF No. 564 at 6).

On October 9, 2018, Robert Remy filed his response in opposition to Shah and Apex Physicians' Motion to Reopen. (*See* ECF No. 565). Remy argues that the case should not be reopened because there is no evidence that Apex GP's financial statement was filed, reviewed, or relied on in this case. (ECF No. 565 at 1). In Remy's view, Shah and Apex Physicians fail to identify how the financial statement is false, and lack evidence showing that the Distribution Trustee saw or relied on the financial statement in pursuing assets of Apex LTAC's estate. (ECF No. 565 at 4). Remy insists that Sanjanlal's affidavit and testimony, relied upon by Shah and Apex Physicians to show fraud on the Court, is mischaracterized and in fact directly contradicts Shah and Apex Physicians' assertions that the financial statements are fraudulent. (ECF No. 565 at 5–8 (citing portions of the affidavit, in which Sanjanlal declares that he did not, nor was he asked to, misrepresent, mischaracterize or change the financial statements)). Remy further argues that no "cause" pursuant to 11 U.S.C. § 350(b) exists to reopen the case. (ECF No. 565 at 5–12). In the alternative, even if it was proper to reopen the case, Remy insists that there exists no legal basis for tolling claims and it would be improper under 11 U.S.C. § 554 to abandon undisclosed assets. (ECF No. 565 at 13–14).

On September 9, 2018, Abeer Saqer and I-Care International, LLC filed a response in opposition to Shah and Apex Physicians' Motion to Reopen. (*See* ECF No. 566). Saqer and I-

Care, while incorporating Remy's Response in full, also separately object to Shah and Apex Physicians' Motion on the basis that it attempts to circumvent the settlement agreement previously entered into by the parties in the Apex Hospital Project Lawsuit and upheld in the second lawsuit. (ECF No. 566 at 2). Saqer and I-Care characterize the Motion to Reopen as an attempt "to delay and impeded discovery, court orders, and a final resolution" in the pending state court matter. (ECF No. 566 at 2). Specifically, Saqer and I-Care allege that Shah and Apex Physicians filed the Motion to avoid deposition requests in the pending state court matter. (ECF No. 566 at 5). On September 9, 2018, Dr. Stephen Koch also filed a response opposing Shah and Apex Physicians' Motion to Reopen. (*See* ECF No. 567). Dr. Koch's response joined in the responses previously filed by Remy, Saqer, and I-Care. (ECF No. 567 at 1, 3).

On October 24, 2018, the Court ordered the parties to file additional pleadings on whether 11 U.S.C. § 1144 precludes the reopening of the case. The parties subsequently filed briefs on this issue.

*11 U.S.C. § 1144*

Shah and Apex Physicians reason that § 1144 does not apply and therefore does not preclude reopening the case, because they do not seek to revoke the confirmation order. (ECF No. 570 at 2). Instead, Shah and Apex Physicians contend that they seek to reopen the case so that the Trustee may then pursue claims against Remy, and other parties, and "distribute the recovered assets[] *in accordance with* the confirmation order . . . ." (ECF No. 570 at 2) (emphasis added). Shah and Apex Physicians further argue that reopening the case is within this Court's discretion, because there exists no alternate forum given that the state court dismissed certain causes of action pursuant to this Court's jurisdiction of the claims under 11 U.S.C. § 554(d). (ECF No. 570 at 4). In the alternative, Shah and Apex Physicians insist that the Court

"deem Apex LTAC's causes of action against Robert Remy tolled and abandoned." (ECF No. 570 at 5–6).

Remy's response largely tracks his previous arguments. (*See* ECF No. 571). Remy notes that Shah and Apex Physicians have provided no evidence that the financial statements were fraudulent, nor that they were relied on "by any person or for any reason." (ECF No. 571 at 1). He highlights that Shah and Apex Physicians have failed to show "cause" as to why the case should be reopened, and further that the passage of time weighs heavily against reopening the case. (ECF No. 571 at 2). Remy insists that even if the case were to be reopened, there exists no legal basis for tolling the statute of limitations and that abandoning such claims would be improper. (ECF No. 570 at 3). Finally, Remy, contrary to Shah and Apex Physicians' argument, maintains that the allegations are a direct attack on the Court's confirmation order, and therefore barred under § 1144's 180-day limitation. (ECF No. 570 at 2). Specifically, Remy alleges that the allegations fit within the statutory goals of § 1144, "because they allege a broad conspiracy by several participants in the Debtor's plan confirmation process to mislead this Court and the Debtor's creditors." (ECF No. 571 at 11). Thus, the allegations are directed ultimately to fraud in the procurement of the confirmation order. (ECF No. 570 at 11). Dr. Koch, Saqer, and I-Care joined in Remy's response. (*See* ECF No. 572; *see also* ECF No. 573).

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

Shah and Apex Physicians ask this Court to reopen this bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 9024. (ECF No. 564 at 5–6). Rule 9024 incorporates Federal Rule of Civil Procedure 60 and generally applies the rule to bankruptcy cases. However, there are important exceptions written into Rule 9024. For the purposes of this Opinion, the most important exception arises under subpart 3 of Rule 9024, which states that, "a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330 . . . ." FED. R. BANKR. P. 9024.

Rule 60 generally provides courts with the authority to grant relief from judgments or orders. *See* FED. R. CIV. P. 60. The rule is strictly construed. *In re Coffee Cupboard*, 119 B.R. 14, 19 (E.D.N.Y. 1990). Rule 60(b) states that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b):
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1)–(6).

Because of the third subpart of Rule 9024, a motion to revoke a confirmation order must be filed within the time frame allowed by 11 U.S.C. § 1144. FED. R. BANKR. P. 9024. Section 1144 provides a strict 180-day time limit to revoke a confirmation order based on an allegation of fraud. That time frame is not satisfied in this case.

### I. Section 1144 precludes reopening the case

Shah and Apex Physicians insist that they do not intend to revoke the Court's confirmation order through their Motion to Reopen. (ECF No. 574-1 at 4). Rather, Shah and Apex Physicians seek to "reopen the bankruptcy estate to allow the trustee to pursue [] claims against Remy, and possibly others . . . and [subsequently] distribute the recovered assets, in accordance with the confirmation order . . . ." (ECF No. 570 at 2). In essence, Shah and Apex Physicians argue that they seek only to enforce the confirmation order after allegedly undisclosed assets have been discovered and recovered.

"[S]ection 1144 establishes a 180-day deadline after the date of entry to move to revoke an order confirming a chapter 11 plan, and then only if the order confirming the plan was procured by fraud." *In re Renaissance Radio, Inc.,* No. 03-33479-BJH, 2019 WL 1503787, at *9 (Bankr. N.D. Tex. Apr. 4, 2019). "Congress was familiar with the chain of events that take place after a chapter 11 plan is confirmed and so provided that only fraud would warrant an attempt to unscramble the egg, and even then only within the 180-day time frame imposed by § 1144." *Id*. (internal quotations omitted); *see In re Midstate Mortgage Investors, Inc*., 105 F. App'x 420, 423 (3d Cir. 2004) ("Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed.") (citations omitted); *In re Coffee Cupboard*, 119 B.R. at 19 ("The 180 day time limit in Section 1144 has been strictly enforced by courts . . . even to the extent of enforcing it in those cases

9 / 16

where the alleged fraud of the debtor is not discovered until after the limitations period."). "While on its face, § 1144 appears to apply only to efforts to revoke a confirmation order, courts have adopted a wider approach, and have applied the bar in § 1144 when the complaint in question appears 'to do indirectly what [the plaintiffs] no longer may do directly' because of the statutory bar." *In re Genesis Health Ventures, Inc.*, 340 B.R. 729, 733 (D. Del. 2006) (quoting *Hotel Corp. of the South v. Rampart 920, Inc.*, 46 B.R. 758, 770–71 (E.D. La. 1985)).

There is no question that the claims set forth by Shah and Apex Physicians involve allegations of fraudulent conduct in procuring confirmation of the Plan. Section 1144 is squarely implicated. Shah and Apex Physicians, however, argue that the confirmation order is not implicated nor need it be revoked, given that the Motion to Reopen constitutes an independent cause of action. (ECF No. 574-1 at 4 (citing *U.S. v. State St. Bank & Trust Co.*, 520 B.R. 29, 70 (Bankr. D. Del. 2014))). Several courts have held that where a claim represents a cause of action independent of the confirmation order, it does not violate § 1144. *See State St. Bank*, 520 B.R. at 70; *see also In re Coffee Cupboard,* 119 B.R. at 19; *In re Newport Harbor Assocs.*, 589 F.2d 20, 24 (1st Cir. 1978); *In re Emmer Bros. Co.*, 52 B.R. 385, 391 (D. Minn. 1985); *In re Genesis Health Ventures,* 340 B.R. at 733. These courts agree, however, that "creditors cannot attack confirmation orders by simply characterizing the attempt as an independent cause of action rather than a motion to revoke the order." *In re Emmer Bros.*, 52 B.R. at 391. In assessing the independence of a claim, the court in *Genesis* set forth the following:

> A claim is not independent where it is simply an attempt to redivide the pie by a disgruntled participant in the Plan. An independent cause of action can be maintained, however, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, *and* the relief sought would not upset the confirmed plan of arrangement.[7]

---

[7] Courts have characterized the last of these considerations as the most important. *In re Coffee Cupboard*, 119 B.R. at 19 (noting that as long as the requested claim could be "carried out without upsetting the confirmed Plan of

*In re Genesis Health Ventures*, 340 B.R. at 733 (emphasis added) (citations and internal quotations omitted). The Fifth Circuit has held that even where an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment. *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358, 360 (5th Cir. 1972).

Shah and Apex Physicians maintain their claim is independent of the confirmation order, given that the fraud they now allege could not have been asserted in the underlying bankruptcy proceedings since it "was not apparent until revealed through the trial testimony of Naqui Sanjanlal . . . ." (ECF No. 574-1 at 5). That the fraud was discovered after the expiration of the 180-day limitation, however, is not material to the inquiry.

> The allegation by the plaintiffs that they had insufficient opportunity to uncover the fraud prior to the confirmation of the debtors' plan, and only discovered the alleged fraud by various means after the expiration of the six month limitation, does not alter the effectiveness of the bar . . . [T]he threshold question is whether the plaintiffs' quest for money damages from the debtors and the other defendants, based on allegations of pre-confirmation fraud, *constitutes a collateral attack on the confirmation order*, which would be time-barred, or whether it represents a separate cause of action against the various defendants, which is not proscribed by §1144.

*In re Genesis Health Ventures*, 324 B.R. at 516 (emphasis added). Accordingly, the fact that alleged fraudulent conduct was discovered beyond the limitations period proscribed by § 1144 does not factor into the Court's analysis when considering whether the claim is independent of the confirmation order.

Shah and Apex Physicians further maintain that their complaint is not a collateral attack on the confirmation order, because the claims were not actually adjudicated given that the assets "did not figure into the [] Plan" and therefore could not have been asserted in the confirmation

---

reorganization, the action is independent, and not merely a collateral attack upon the order of confirmation"); *In re Emmer Bros.*, 52 B.R. at 392 ("Finally and most importantly, the relief sought by Marquette's complaint would not upset the confirmed plan arrangement.").

proceedings. (ECF No. 574-1 at 5). In essence, Shah and Apex Physicians argue that the Plan did not deal with the alleged fraud claim and undisclosed assets they now seek to uncover and recover.

"Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests *all* of the property of the estate in the debtor." 11 U.S.C. § 1141(b) (emphasis added). In this case, the confirmation order and the Plan vested all of the estate property in the Trust through the following language:

> X. <u>Vesting of Trust Assets</u>. As of the Effective Date, except as otherwise expressly provided in the Plan, title to *all* Trust Assets (including, without limitation, Chapter 5 Causes of Action), shall vest in the Apex LTAC Distribution Trust.

(ECF No. 212 at 7) (emphasis added).

> 8.1 <u>Vesting of Assets</u>. Pursuant to the Apex LTAC Distribution Trust Agreement, the Distribution Trustee shall be appointed representative of the Estate *for the purpose of prosecuting any and all rights, claims or causes of action, including but not limited to the Litigation Claims, whether known or unknown, asserted or unasserted*, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law. The Distribution Trustee may prosecute, settle or dismiss rights, claims or causes of action as the Distribution Trustee sees fit . . . and all proceeds there from shall be the property of the Trust, except as expressly released within this Plan.

(ECF No. 212-1 at 16) (emphasis added).

A plan "deals with" property, pursuant to § 1141(c), as required for an interest in that property to be extinguished upon confirmation of the plan, if there is a general reference in the plan that would encompass the property at issue. *Frontier Insurance Group, Inc. v. Frontier Insurance Group, LLC (In re Frontier)*, 585 B.R. 685, 697 (Bankr. S.D.N.Y 2018); 11 U.S.C. § 1141(c). Here, the Plan dealt with the purported fraudulent claims and undisclosed assets when it detailed what assets were to become a part of the Trust, even if that reference was a general one, and further assigned those causes of action to the Distribution Trustee:

> 7.2 <u>Funding of Res of Trust</u>. Upon the Vesting Date, the Trust shall also be deemed to have taken an *assignment of all rights or causes of action constituting Distributable Assets in which the Debtor may own an interest against third parties for obligations existing on the Effective Date*, unless expressly released herein or by separate order of the Bankruptcy Court. Any litigation commenced after the Vesting Date in which the debtor is the plaintiff shall be commenced in the name of the Distribution Trustee as successor to the rights of the Debtor.

(ECF No. 212-1 at 15) (emphasis added).

The Plan became effective on January 26, 2010. (*See* ECF No. 243). As of that date, as provided for in the confirmation order and Plan, all assets, including any potential causes of action known or unknown and any assets disclosed or undisclosed were vested in the Trust and were to be prosecuted by the Distribution Trustee. Without question, both the confirmation order and the Plan dealt with the purported undisclosed assets and any causes of action known or unknown.

The bankruptcy estate and distribution to creditors are the very core of the confirmation order and Plan. While Shah and Apex Physicians' Motion may arguably contemplate relief other than revoking the confirmation order (reopening the case to pursue claims against Remy and others), it necessarily challenges the substance of the confirmation order. The assets, including these claims, were vested in the Distribution Trust. They are no longer available for prosecution by any other party, unless the confirmation order's vesting provision is altered. That, the Court cannot do.

Even if Shah and Apex Physicians' claim could be characterized as a simple damages claim, its quest for a distribution of allegedly undisclosed assets that the plan explicitly dealt with and which may or may not add value to the estate is an undeniable attack on the confirmation order. *See* 8 COLLIER ON BANKRUPTCY ¶ 1144.04[2][b] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[I]f the effect of a damages award would be to alter the economic outcome of the plan, the

action would be a de facto reversal of the plan and should not be allowed to proceed."). Accordingly, § 1144 precludes Shah and Apex Physicians from reopening the case pursuant to Fed. R. Civ. P. 60(b) and Fed. Bankr. R. 9024. *See In re Newport Harbor Assocs.*, 589 F.2d at 24 ("[N]otwithstanding the court's traditional equitable powers or the powers conferred by Rule 60(b), strict compliance with the six-month period is a prerequisite to relief.").

**II. The alleged undisclosed assets cannot be tolled or abandoned**

*Abandonment of Claims*

In the alternative, Shah and Apex Physicians ask this Court "for a declaration that such assets and related claims have been abandoned by the bankruptcy estate such that they may be pursued" outside of the bankruptcy courts; presumably, in the pending state court litigation. (ECF No. 564 at 6). However, since the Plan was confirmed, and the bankruptcy estate was fully administered in accordance with the Plan, there is no property of the estate remaining that may be abandoned.

When a voluntary bankruptcy petition is filed, all of the debtor's property becomes property of the bankruptcy estate. 11 U.S.C. § 541. Once an asset becomes a part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is transferred (i.e. sold), exempted, or abandoned by the trustee. *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008); *see* 11 U.S.C. § 554(d). As a general rule, there can be no abandonment of property by mere operation of law that was not listed in the debtor's schedules or otherwise disclosed to the creditors. 5 COLLIER ON BANKRUPTCY ¶ 554.03[7] (Richard Levin & Henry J. Sommer eds.,16th ed.). "This principle is recognized in section 554(c) which provides that, unless the court orders otherwise, property of the estate is neither abandoned nor administered in the case remains property of the estate." *Id*. "Even after the case

is closed, the estate continues to retain its interest in unscheduled property." *Id*; *see* 3 COLLIER ON BANKRUPTCY ¶ 350.03[1] (Richard Levin & Henry J. Sommers eds., 16th ed.) ("Where the assets are not properly disclosed on schedules, the assets are not abandoned and may be administered when a case is reopened."). Consequently, pursuant to § 554(d) a debtor may be unable to assert a cause of action after the bankruptcy if the cause of action was not scheduled. *Id*. However, if the property is later discovered and is valuable, the court may reopen the case. *Id*. If it is not valuable, the court may order the property abandoned without reopening the case and without incurring additional expense. *Id*.

Pursuant to § 554(b), a party in interest may request that the court order abandonment of estate property that is burdensome to the estate or that is of inconsequential value and benefit. 5 COLLIER ON BANKRUPTCY ¶ 554.02[4] (Richard Levin & Henry J. Sommer eds.,16th ed.); 11 U.S.C. § 554(b). If the motion for abandonment is opposed, the party requesting abandonment must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient. *Id*. By its express terms, § 554(b) applies only to abandonment of "property of the estate." The term "property of the estate" refers to the estate created by commencement of a case under §§ 301, 302, or 303 of Title 11 and includes "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, pursuant to 11 U.S.C. § 1141(b), unless otherwise provided for in the plan or order confirming the plan, confirmation of a plan vests all estate property in the debtor.

Shah and Apex Physicians filed this Motion over nine years after confirmation of Apex LTAC's plan. (*See* ECF No. 212). The Plan provides that on the effective date, title to property vested in the Apex TLAC Distribution Trust. (ECF No. 212 at 7). The Plan became effective on January 26, 2010. (*See* ECF No. 243). Consequently, there is no estate, as contemplated in

§ 554(b), now in existence and no property of the estate that the Court can order to be abandoned.

*Tolling of Claims*

Although Shah and Apex Physicians have also asked this Court for a declaration that any claims related to the fraudulent financial statement have been tolled, they have no standing to make this request. The owner of the claims is the Distribution Trust. Shah and Apex Physicians may not assert tolling rights on assets that do not belong to them. The Court denies the parties' request.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **April 26, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE